[No. 43884.    En Banc.    October 7, 1976.]

DON LATHAM, *Petitioner*, v. WILLIAM F. HENNESSEY, *as Administrator, Respondent.*

87 Wn.2d    p. v, footnote 1       The word "March" should be "May"

p. 551, line 18      The word "There" should be "Their"

*Lanning, Mahoney & Bryan* and *Phil Mahoney*, for petitioner.

*Adair, Kasperson, Petersen & Hennessey* and *William F. Hennessey,* for respondent.

HAMILTON, J.—This appeal concerns the disposition of property of a man and wife at the termination of a nonmarital family (meretricious) relationship.

In 1949, Loretta Testall and her former husband were divorced. As a result, she received a house valued at $7,000 with a $1,700 mortgage. Loretta Testall began living with petitioner, Donald Latham, in the Spring of 1955. There relationship possessed all of the characteristics of a traditional marriage, except they did not obtain a marriage license. The relationship continued for 15 years, and they eventually married on June 17, 1970.[1] Throughout this period, petitioner maintained steady employment as a machinist and Loretta Testall worked approximately 1 year.

When petitioner moved into Loretta Testall's house, it was in a state of disrepair. He completely renovated the house and, as a result, its value increased substantially. Petitioner testified he performed the labor and provided the materials for the improvements, except approximately $1,000 for a furnace, a water heater, and bathroom tile. Petitioner also testified he made the mortgage payments and paid the property tax assessments. Petitioner, however, offered no proof of the expenditures. Record title to the

---

[1] Loretta Testall did take the name Loretta Latham after her marriage to petitioner. However, she still was known as Loretta Testall, and it is for this reason that we will refer to her by this name.

house remained in Loretta Testall's name during this period.

In 1959, the house was sold and Loretta Testall utilized these funds to purchase another house for $19,500. Title to this house was placed in Loretta Testall's name. The record indicates petitioner refurbished the second house and built an apartment unit in the basement.

In January 1971, Loretta Testall's doctor discovered she had cancer and she could no longer speak or care for herself. Petitioner and his sister cared for her until her death on April 4, 1971. The decedent's will left one-half of her estate to petitioner, and one-half to her daughter by her prior marriage.

Petitioner filed a creditor's claim and subsequently an action claiming an interest in the house. The trial court ruled petitioner did not establish an implied partnership, a joint venture, or a trust relationship with regard to the house, and declared the house separate property of the decedent's estate. The Court of Appeals affirmed the trial court decision, *Latham v. Hennessey*, 13 Wn. App. 518, 535 P.2d 838 (1975), and we granted review of the Court of Appeals' decision, *Latham v. Hennessey*, 85 Wn.2d 1016 (1975).

■  Initially, petitioner seeks a reexamination of our decision in *Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948), wherein we stated at page 351:

> [P]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation*, belongs to the one in whose name the legal title to the property stands.

We also established the so-called *"Creasman* presumption" at page 356:

> [I]n the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it.

However, we need not reconsider our *Creasman* decision, because the presumption is unnecessary and inapplica-

ble to the facts of this case. The trial court did not presume that Loretta Testall owned the house at her death, because record title to the house was in her name. In fact, the trial court did not mention the *Creasman* presumption. Substantial evidence in the record supports the trial court's finding that the house was intended to be the separate property of Loretta Testall without the presumption. This evidence reveals Loretta Testall and petitioner clearly intended the house to remain her separate property. Both individuals made various statements supporting this conclusion. Loretta Testall always referred to the house as her house, and petitioner also made statements admitting her ownership and indicating he was doing the work on the houses to assist her. Additionally, Loretta Testall had numerous opportunities to execute a new deed to reflect any ownership interest of petitioner. When she sold the first house and purchased the second one, she easily could have changed the title to both her and petitioner's name. She chose to retain sole ownership of the house. Loretta Testall, however, did express a desire to repay petitioner for the work he performed on the houses, and she repaid petitioner for his services and companionship by leaving him one-half of her entire estate.

Even though it is not necessary to pass on this issue in the present case, we deem it appropriate to comment on the continuing validity of this legal presumption. Our recent decisions have criticized the *Creasman* decision. In *West v. Knowles*, 50 Wn.2d 311, 313, 311 P.2d 689 (1957), we restricted *Creasman* "in its application to its own particular facts." In *In re Estate of Thornton*, 81 Wn.2d 72, 77, 499 P.2d 864 (1972), we stated: "We are dubious about the continuing validity of this legal presumption or fiction, accepted and applied by the court in *Creasman v. Boyle, supra.*"

We also have developed numerous exceptions to the *Creasman* presumption in order to avoid inequitable results. These exceptions include: (1) implied partnership or

joint venture, *In re Estate of Thornton, supra* at 78-81; (2) constructive trusts, *Humphries v. Riveland,* 67 Wn.2d 376, 407 P.2d 967 (1965); (3) resulting trusts, *Walberg v. Mattson,* 38 Wn.2d 808, 232 P.2d 827 (1951); and (4) express or implied contract to make a will, *In re Estate of Thornton, supra* at 76.[2]

There also appears to be a viable alternative approach to the *Creasman* presumption and its exceptions. A court could ascertain whether there exists a long-term, stable, nonmarital family relationship. Such relevant factors include continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects. If a relationship exists, it is reasonable to assume that each member in some way contributed to the acquisition of the property. A court could then examine the relationship and the property accumulations and make a just and equitable disposition of the property. Also, if warranted by the facts of a particular case, the court could apply the community property laws by analogy to determine the rights of the parties. *See In re Estate of Thornton, supra* at 80-81. A joint and equitable disposition of property entails considering "the respective merits of the parties, through whom the property was acquired, monetary and labor contributions, whether or not children were born of the relationship and who is to care for them, and the general condition in which the termination of the relationship will leave each of the parties." 48 Wash. L. Rev. 635, 644, n.44 (1973). Considerable authority supports the adoption of the just and equitable approach. *See Omer v. Omer,* 11 Wn. App. 386, 523 P.2d 957 (1974); *In re Marriage of Cary,* 34 Cal. App. 3d 345, 109

---

[2]Petitioner also claims he established either the implied partnership or resulting trust exceptions. Even if we were to reach this issue today, petitioner would not prevail. The relationship of Loretta Testall and petitioner with regard to the house arose out of a personal relationship, and petitioner offered no proof that he and Loretta Testall entered a *"partnership to operate a business for profit"*. *In re Estate of Thornton,* 81 Wn.2d 72, 80, 499 P.2d 864 (1972). Also, petitioner failed to establish by clear, cogent, and convincing evidence that a trust relationship existed. *Humphries v. Riveland,* 67 Wn.2d 376, 390, 407 P.2d 967 (1965).

Cal. Rptr. 862 (1973); *In re Estate of Atherley*, 44 Cal. App. 3d 758, 119 Cal. Rptr. 41 (1975); *Humphries v. Riveland*, *supra* at 397-402 (Finley, J. dissenting); *West v. Knowles*, *supra* at 315 (1957) (Finley, J., concurring specially); Cross, *The Community Property Law in Washington*, 49 Wash. L. Rev. 729, 739-45 (1974); Comment, *The Meretricious Relationship in Washington: A Survivor's Interest in Common Property*, 9 Willamette L.J. 102 (1973); Note, *Illicit Cohabitation: The Impact of the Vallera and Keene Cases on the Rights of the Meretricious Spouse*, 6 U.C.D. L. Rev. 354 (1973); Comment, *In re Marriage of Cary: The End of the Putative-Meretricious Spouse Distinction in California*, 12 San Diego L. Rev. 436 (1975); Comment, *A Continuing Controversy: Assessing the Still Uncertain Status of the Meretricious Spouse in California*, 6 Golden Gate L. Rev. 179 (1975); 48 Wash. L. Rev. 635 (1973); 10 Gonzaga L. Rev. 926 (1975).

As we have stated in *In re Estate of Thornton, supra* at 79, per Justice Finley: "Arguably, *Creasman* should be overruled and its archaic presumption invalidated." However, in light of the facts of this case and the trial court's findings, we are not squarely confronted with the application of the presumption and believe it would be inappropriate to utilize this case as a vehicle to overrule *Creasman*. We are not averse to a reconsideration of the *Creasman* presumption when presented with an appropriate set of circumstances.

Petitioner also assigns error to a number of evidentiary rulings by the trial judge. We, like the Court of Appeals, have examined each ruling to which objection is made and find no reversible error.

The judgments of the trial court and the Court of Appeals are affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.