[No. 55674-1.   En Banc.   September 14, 1989.]

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
IN
MARILYN E. PEFFLEY–WARNER, *Appellant,* v. OTIS R. BOWEN, *Appellee.*

*Lawrence A. Weiser* of *University Legal Assistance*, for appellant.

*John E. Lamp, United States Attorney; Thomas O. Rice, Assistant Attorney of the United States; Patrick E. McBride, Chief Counsel;* and *Richard H. Wetmore, Assistant Regional Counsel,* for appellee.

SMITH, J.—Appellant Marilyn E. Peffley–Warner brought an action in the United States District Court for the Eastern District of Washington appealing a decision by the United States Social Security Administration, claiming that Appellee Otis R. Bowen, M.D., Secretary of Health and Human Services, wrongfully denied her widow's benefits under the Social Security Act upon the death of Sylvan F. Warner. Appellant and Mr. Warner were never married, but maintained a "meretricious" relationship for 22 years prior to his death.

Appellant Peffley–Warner appealed to the United States Court of Appeals for the Ninth Circuit. That court certified

the following question to this court prior to resumption of the case:

> Would Washington law afford a person in Ms. Warner's situation the same status as that of a wife with respect to the intestate devolution[1] of Sylvan Warner's personal property?

We answer the question in the negative.

The sole issue in this case is thus whether Washington affords a woman partner in a "meretricious" relationship the same status as a wife under the laws of intestate succession with respect to the personal property of the deceased partner.

Appellant Peffley–Warner in 1962 met and became involved in a non–marital relationship with Sylvan F. Warner, holding themselves out to the public as "husband and wife."[2] They never had a licensed or ceremonial marriage. The relationship was continuous and unbroken, lasting over 20 years until Mr. Warner's death in May 1984. Appellant contributed money received from family, friends and public assistance to the couple's financial needs during the 20–year relationship.

In March 1963, Sylvan F. Warner executed a will in which he made no reference to appellant. He purchased an insurance policy in July 1969 which identified the insured as "Sylvan F. Warner" and the beneficiary as "Marilyn Warner." In Mr. Warner's applications for disability insurance and retirement insurance benefits, dated December 31, 1970, he indicated that he was "divorced."

Sylvan F. Warner died in May 1984. Appellant applied for and was denied widow's benefits under the Social Security Act.[3] The Social Security Administration determined

---

[1]The term "devolution" means "passing down." It is substantially synonymous with "descent and distribution" as used in Washington probate statutes, RCW 11.02.

[2]Appellant had been married to John Peffley. Two sons were born of that marriage. She said she believed she was divorced from John Peffley, although there is no evidence in this record of dissolution of that marriage.

[3]Appellant contends that she qualifies as the "widow" of Sylvan F. Warner for purposes of collecting "widows' benefits" under the Social Security Act, section

she was not the decedent's wife under applicable Social Security statutes pertaining to marital status. The agency based its decision on the fact that a common–law marriage may not be established in Washington State and that appellant did not qualify as a "wife" under Washington probate law.

Appellant Peffley–Warner's application for widow's benefits was also denied at each of the four levels of administrative review.[4]

On April 3, 1985, the Honorable Arthur H. Toreson, Judge Pro Tempore, Spokane County Superior Court, entered findings of fact and conclusions of law in the probate of Sylvan F. Warner's will. The court found that appellant and Mr. Warner had established a "meretricious"[5] relationship prior to March 1963 which existed until Mr. Warner's death. The court concluded that the relationship was "a meretricious relationship of the type as

202(e)(1), Widow's Insurance Benefits, 42 U.S.C. § 402(e)(1), because she would be entitled to a wife's share of Mr. Warner's personal property under Washington laws of intestate devolution.

[4]Initial and reconsideration decisions are based on review of exhibits. The third level of review is a hearing before an administrative law judge. The final level of administrative review is by the Appeals Council. *See generally* 20 C.F.R. § 404.901 *et seq.* (1988).

[5]Appellant herself referred to her non–marital relationship as "meretricious." Although the word conveys a clear and specific legal meaning, it is nevertheless an offensive, demeaning and sexist word. "Meretricious" comes from the Latin word "meretrix," meaning "prostitute." There seems to be no more adequate word or phrase which so clearly conveys the precise legal meaning intended since a "common–law marriage" may not be established in this state. Perhaps we may eventually find an appropriate substitute. The reasonably synonymous words "unmarried cohabiting relationship," "pseudo marriage" or "spurious marriage" may be less offensive, but are still demeaning. None of these seems to adequately convey the precise meaning of "meretricious relationship." Until a better expression emerges, we will continue to use it. *See In re Eggers,* 30 Wn. App. 867, 871 n.2, 638 P.2d 1267 (1982). A new expression, "domestic partners," has entered the linguistic arena to refer to persons living together without a formalized marriage. This does not seem to be as legally precise as "meretricious relationship" either. *See* San Francisco city ordinance 176–89, enacted June 5, 1989.

described in *Lindsey v. Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984)."

The court further found that Mr. Warner had purchased his ex–wife's interest in their house with a $3,000 check written against his personal business account. The deed conveyed the ex–wife's interest solely to Mr. Warner. The court concluded that appellant was not entitled to an award in lieu of homestead under RCW 11.52.010. Finally, the court concluded that the house in which appellant and Mr. Warner lived was Mr. Warner's separate property, but granted appellant an equitable lien of $1,500 against it.

In November 1986 appellant's appeal in the United States District Court for the Eastern District of Washington was denied by United States Magistrate Smithmoore P. Myers. On a motion for summary judgment, the magistrate dismissed her claim, holding that she did not have the same status a wife would have under Washington laws of intestacy and therefore was not entitled to widow's benefits under the Social Security Act.

Appellant Peffley–Warner appealed Magistrate Myers' decision to the United States Court of Appeals for the Ninth Circuit, with oral argument heard on October 4, 1988. That court's ultimate decision will consider whether Ms. Peffley–Warner satisfies the statutory requirement for widow's benefits under 42 U.S.C. § 416(h)(1)(A) that the applicant have "the same status with respect to the taking of [the decedent's personal] property as a wife" under the law of intestate devolution of the decedent's domicile (Washington).[6] On November 1, 1988, the Honorable Betty B. Fletcher, Court of Appeals for the Ninth Circuit, entered the order certifying the issue to this court.

Appellant Peffley–Warner contends she is entitled to widow's benefits under the Social Security Act because this court in *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984) overruled *Creasman v. Boyle*, 31 Wn.2d

---

[6]Order Certifying State Law Question to the Washington Supreme Court Pursuant to RCW 2.60.020, at 3.

345, 196 P.2d 835 (1948) and expanded the property distribution rights of couples in a "meretricious" relationship.

Appellant contends that by overruling *Creasman* (involving intestate distribution), this court in *Lindsey* expressly recognized the expanded rights of a surviving partner in a "meretricious" relationship and that this recognition should be sufficient to qualify her as a "widow" under 42 U.S.C. § 416(h)(1)(A).[7]

Appellee Otis R. Bowen contends that under the applicable Washington intestate succession statute, RCW 11.04-.015, appellant must show that she is the "spouse" of the deceased to share in the deceased's estate. Appellee contends that because appellant is not a spouse, she is not entitled to a share of Sylvan F. Warner's estate and that the administrative law judge and the United States Magistrate correctly applied Washington law in denying appellant's application for Social Security widow's benefits.

The Social Security Act provides three basic tests for determining whether an applicant is the widow of a wage earner covered by Social Security:

(1) *Valid marriage test.* An applicant is a widow if the courts of the state in which the insured is domiciled at the time of death would find that such applicant and such insured individual were validly married at the time he died. 42 U.S.C. § 416(h)(1)(A).

(2) *Intestacy devolution test.* If the courts would not find the applicant and the insured were validly married, such applicant shall, nevertheless be deemed to be the widow of the insured "if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a wife . . . of such insured individual." 42 U.S.C. § 416(h)(1)(A).

(3) *Legal impediment test.* In any case where "it is established . . . that such applicant in good faith went

---

[7]To date, no Washington case explicitly applies the *Lindsey* doctrine to a "meretricious" relationship involving intestate distribution.

through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony would have been a valid marriage . . . such purported marriage shall be deemed to be a valid marriage." 42 U.S.C. § 416(h)(1)(B).
42 U.S.C. § 416(h)(1). *See also* Rombauer, *Marital Status and Eligibility for Federal Statutory Income Benefits: A Historical Survey,* 52 Wash. L. Rev. 227, 257–73 (1977).

Although Appellant Peffley–Warner does not qualify under the *valid marriage test* nor the *legal impediment test,* she would be entitled to widow's benefits under the Social Security Act if she could satisfy the *intestacy devolution test* and could show that she would, under Washington law, have the same status as a wife or widow of the deceased insured. This is the essence of the question certified to this court by the United States Court of Appeals.

RCW 11.04.015(1) is the pertinent Washington statute governing descent and distribution of intestate real and personal property. It provides, in part:

The net estate of a person dying intestate, or that portion thereof with respect to which the person shall have died intestate . . . shall be distributed as follows:

(1) Share of surviving spouse. The surviving spouse shall receive the following share: . . .

If there is no surviving spouse or if a portion of the estate is not distributable to the surviving spouse, then the estate is distributed in descending order to the issue of the intestate, the intestate's parents or their issue, or the intestate's grandparents or their issue. RCW 11.04.015(2).

A common–law marriage may not be established in Washington. However, a common–law marriage valid in the state where contracted and consummated is recognized as a valid marriage in this state. *See In re Warren,* 40 Wn.2d 342, 344, 243 P.2d 632 (1952); *In re Estate of Gallagher,* 35 Wn.2d 512, 514–15, 213 P.2d 621 (1950). A "common law" marriage is one without formal solemnization. However, there must be an actual and mutual agreement to enter into

a matrimonial relation, between parties capable in law of making such a contract, consummated by their assumption openly of marital duties and obligations. Merely living together, even as husband and wife, does not make a common–law marriage. *See In re Estate of Gallagher, supra* at 515.

The Spokane County Superior Court concluded that no valid marriage existed between appellant and Mr. Warner and that appellant was not a "surviving spouse" entitled to receive a share of his estate under the intestate succession statute, RCW 11.04.015.

Under RCW 11.52.010 an award in lieu of homestead may be made to the "surviving spouse" of a decedent. The court concluded appellant was not a surviving spouse of Mr. Warner and therefore could not qualify for an award in lieu of homestead under RCW 11.52.010 or an analogous equivalent.

The principal Washington cases involving distribution of property between partners in an unmarried cohabiting relationship are *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948) and *In re Marriage of Lindsey,* 101 Wn.2d 299, 678 P.2d 328 (1984), which overruled *Creasman.*

Until *Lindsey, Creasman* determined the status of property acquired by a couple living together as husband and wife without marriage. The *"Creasman* presumption"[8] was that property acquired during an unmarried relationship was not community property, but was instead the property of the one in whose name legal title was taken. *Creasman,* 31 Wn.2d at 351. It was presumed, as a matter of law, that the parties intended to dispose of the property exactly as they did. *Creasman,* 31 Wn.2d at 354. *Creasman* involved a 7–year unmarried cohabiting relationship between Harvey Creasman and Caroline Paul, terminated by the death of Ms. Paul. At her death, most of the property was in Ms.

---

[8]The holding in *Creasman* came to be known as the *"Creasman* presumption." *See Latham v. Hennessey,* 87 Wn.2d 550, 552, 554 P.2d 1057 (1976). *See also Lindsey,* 101 Wn.2d at 301.

Paul's name, although a substantial portion was acquired with Mr. Creasman's earnings. The trial court awarded Mr. Creasman an undivided one–half interest in the property and awarded an undivided one–half interest to the administrator of decedent's estate. The decision was reversed on appeal. The court found there was "no ground or reason for invoking any equitable theory of resulting trust." *Creasman,* 31 Wn.2d at 356.[9]

*Creasman* was expressly overruled by *Lindsey,* a marriage dissolution case involving a couple who had lived together in an unmarried relationship for several years prior to their ceremonial marriage which itself lasted slightly over 5 years. In *Lindsey,* this court adopted the rule that courts must examine a relationship and property accumulated during that relationship, and make a just and equitable distribution of the property. *Lindsey,* 101 Wn.2d at 331. In *Lindsey,* although the husband's separate real property had been properly characterized as separate property, the court held that the lower court erred when it failed to consider the wife's interest in a barn/shop constructed by the couple prior to their marriage. *Lindsey,* 101 Wn.2d at 332.

Appellant Peffley–Warner contends that the *Lindsey* ruling gave the parties a right to an equitable division of the community property. However, that contention goes beyond this court's holding in *Lindsey.*

---

[9]The *Creasman* presumption has been avoided through various exceptions which characterize the property relationship between the parties in a meretricious relationship or "non–marital cohabitation situation." *Lindsey,* 101 Wn.2d at 303–04, citing Washington State Bar Ass'n, *Community Property Deskbook* § 2.7, at 2–8 (1977). The most common means of avoidance include: (1) tracing source of funds (*West v. Knowles,* 50 Wn.2d 311, 313, 311 P.2d 689 (1957)); (2) implied partnership or joint venture (*In re Estate of Thornton,* 81 Wn.2d 72, 79, 499 P.2d 864 (1972); *Latham v. Hennessey,* 87 Wn.2d 550, 554 P.2d 1057 (1976)); (3) resulting/constructive trust (*Omer v. Omer,* 11 Wn. App. 386, 523 P.2d 957 (1974)); (4) cotenancy (*Shull v. Sheperd,* 63 Wn.2d 503, 387 P.2d 767 (1963)); (5) contract theory (*Dahlgren v. Blomeen,* 49 Wn.2d 47, 298 P.2d 479 (1956)); *Marvin v. Marvin,* 18 Cal. 3d 660, 557 P.2d 106, 134 Cal. Rptr. 815 (1976) (summarized from *Community Property Deskbook* §§ 2.8–2.12). *Lindsey,* 101 Wn.2d at 303–04.

*Lindsey* involved *equitable* division of property following breakup of a relationship where the parties had cohabited for several years before their 5 years of marriage. *Lindsey* states that courts must examine the relationship and the property accumulations and make a just and equitable distribution. By overruling *Creasman* (involving intestate property distribution) *Lindsey* did not expand the rights of a surviving partner in an unmarried cohabiting relationship to the personal property of a deceased partner. *Lindsey* merely overruled *Creasman* to the extent that *Creasman* had established a presumption that property acquired by a couple in an unmarried relationship is not community property and belongs to the person with legal title. The court merely recognized the contributions made by both parties to the purchase and maintenance of property and, through an equitable division of the property or analogous compensation, sought to avoid unjust enrichment of one partner at the expense of the other.

In the case now before us, the probate court examined the relationship of Appellant Peffley–Warner and Sylvan F. Warner and made an equitable distribution of their property. Finding a "meretricious" relationship as described in *Lindsey,* the court limited appellant's award to a lien on the house owned by Mr. Warner and occupied by both of them in recognition of "the equities of the parties' relationship during the time of the acquisition of the property." The court denied appellant a widow's share or an award in lieu of homestead because her relationship with Mr. Warner did not qualify her for surviving spouse inheritance rights under RCW 11.52.010.

By common definition, a spouse is a marriage partner or a wife or husband.[10] Marilyn E. Peffley–Warner and Sylvan F. Warner were neither. Theirs was a "meretricious" relationship. Such a relationship is not a marriage. They were not spouses. They were not husband and wife. *Davis*

---

[10]*See* Black's Law Dictionary 1574 (4th ed. 1951); *Webster's II, New Riverside University Dictionary* 1125.

*v. Department of Empl. Sec.*, 108 Wn.2d 272, 278–79, 737 P.2d 1262 (1987). Therefore, because appellant is not a "spouse," she cannot receive a share of the estate of Sylvan F. Warner under the intestate succession laws of the state of Washington.[11]

We resolve the question certified by the United States Court of Appeals for the Ninth Circuit by holding that under Washington law, a surviving partner in a "meretricious" relationship does not have the status of a widow with respect to intestate devolution of the deceased partner's personal property. The division of property following termination of an unmarried cohabiting relationship is based on equity, contract or trust, and not on inheritance. *See Lindsey*, 101 Wn.2d at 303–04.

Appellant Marilyn E. Peffley–Warner is neither a surviving spouse nor an heir to decedent Sylvan F. Warner. She is therefore not entitled to share in the decedent's estate under Washington laws of intestate succession, RCW 11.04.015.

We therefore answer the certified question from the United States Court of Appeals in the negative.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, and DURHAM, JJ., concur.

---

[11]Appellant further contends that other courts have interpreted state case law to recognize personal property rights acquired by "meretricious" couples as sufficient to satisfy 42 U.S.C. § 416(h)(1)(A). The cases cited by appellant in support of her contention—that personal property rights acquired by "meretricious" couples are sufficient to satisfy 42 U.S.C. § 416(h)(1)(A)—are distinguishable. *Chlystek v. Califano*, 599 F.2d 1270, 1271 (3d Cir. 1979), and *Aubrey v. Folsom*, 151 F. Supp. 836 (N.D. Cal. 1957) involved marriages recognized as valid common law or putative "good faith" marriages. *See also Chambers v. Harris*, 687 F.2d 332, 334–35 (10th Cir. 1982) ("meretricious" spouses not included in statutory definition of heirs under California law, applied by Court of Appeals for the Ninth Circuit in determining whether appellant could be considered a widow under 42 U.S.C. § 416(h)(1)(A)).