33 P.3d 735 (2001)
Frank VASQUEZ, Petitioner,
v.
Joseph HAWTHORNE, as personal representative of the Estate of Robert Awrey Schwerzler, Respondent.
No. 69655-1.
Supreme Court of Washington, En Banc.
Argued February 13, 2001.
Decided November 1, 2001.
*736 Suzanne Thomas, Jamie Pedersen, Seattle, Jennifer Pizer, Los Angeles, CA, Doni Gewirtzman, New York, NY, Amicus Curiae on Behalf of Lambda Legal Defense and Education Fund.
Patricia Novotny, Seattle, Amicus Curiae on Behalf of Northwest Woment Law Center.
Joshua K. Baker, Washington, DC, Darren Walker, Vancouver, Amicus Curiae on Behalf of Marriage Law Project.
Roger A. Leishman, Karen E. Boxx, Seattle, Amicus Curiae on Behalf of American Civil Liberties Union.
Terry Barnett, Tacoma, for Petitioner.
Ross Taylor, Tacoma, for Respondent.
JOHNSON, J.
The issue in this case is whether the facts were sufficient to grant summary judgment based on the equitable doctrine of meretricious relationship. Granting summary judgment for the plaintiff, the trial court held Frank Vasquez (Vasquez) had proved he was involved in a long term, stable, cohabiting relationship with the decedent, Robert Schwerzler (Schwerzler). The trial court further found the property acquired during the relationship was the joint property of Vasquez and Schwerzler, and that it passed to Vasquez upon Schwerzler's death and was not part of the estate. Since Schwerzler died without a will, the trial court drew an analogy to community property laws and the probate statute governing intestate distribution in awarding property. The Court of Appeals reversed, reasoning that because meretricious relationships are marital-like and persons of the same sex cannot be legally married, a meretricious relationship cannot exist between members of the same sex. Vasquez v. Hawthorne, 99 Wash.App. 363, 994 P.2d 240 (2000). The Court of Appeals, however, remanded for trial on other equitable theories. We granted review.
We hold the trial court erred in resolving this case on summary judgment. The record on summary judgment is inadequate to reach the legal issue presented. It was further error for the Court of Appeals to reach the merits of the case. We vacate the decision of the Court of Appeals and remand this case to the superior court for trial.

FACTS
Upon Schwerzler's death, Vasquez filed a claim against the estate asserting he and Schwerzler had formed an economic community and he was entitled to an equitable share of the property. Joseph Hawthorne (Hawthorne), who was appointed personal representative of the estate, denied the claim. Vasquez filed suit in superior court, asserting his claim under several equitable theories. Vasquez made a motion for partial summary judgment requesting relief under the meretricious *737 relationship doctrine. To decide the motion, the trial court considered several conflicting affidavits of the parties. The trial court made two rulings relevant to this case. First, the trial court determined Vasquez and Schwerzler had a meretricious relationship and the property acquired during the course of their relationship was presumed jointly owned. Second, the trial court awarded some of the property to Vasquez by analogizing to our probate laws (i.e., community-like property goes to the survivor). Hawthorne appealed. The Court of Appeals reversed and remanded the case for trial on the theories of implied partnership and equitable trust, which had not been decided by the trial court. We granted Vasquez's petition for review.

ANALYSIS
A summary judgment motion under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. The court must consider all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000).
The facts of this case are contested through the affidavits of the parties. First, the nature of the relationship between Vasquez and Schwerzler is disputed. Vasquez presents affidavits asserting he and Schwerzler were a same sex couple. The estate offers affidavits contending Vasquez and Schwerzler were not a same sex couple and did not hold themselves out as such. Vasquez offers as proof of their relationship that he and Schwerzler lived together from April 1967 until October 1995, with the exception of two years in the early 1970s during which they lived in different apartments in the same building. The estate counters that no such relationship existed. Although they lived together, Vasquez and Schwerzler did not travel together on vacation and each had his own bedroom.
Similarly, the nature of Vasquez's and Schwerzler's business relationship is disputed. On the one hand, Vasquez contends the couple made their living recycling boxes and bags. Schwerzler managed their financial affairs and any remuneration Vasquez earned was contributed to their economic community. On the other hand, the estate argues that Schwerzler inherited the bag business from his father and any property he owned was derived from either his inherited wealth or through his separate businesses. Schwerzler placed all property acquired during their 28 years together in his own name, including the house he and Vasquez shared, a life insurance policy, two automobiles, and a checking account. The estate argues Vasquez was merely a handyman and any property found in Schwerzler's home should be included in his estate and pass to his legal heirs.
On review, we conclude the trial court did not have sufficient undisputed factual information to resolve this case on its merits. From the affidavits, the trial court could not determine what type of relationship existed between Vasquez and Schwerzler. Nor could it conclude what property acquired during the course of their relationship could be subject to equitable division. Without proof of the facts asserted, it was not possible for the trial court to know the character of the relationship between Schwerzler and Vasquez, the nature and extent of contribution to any property acquired by the parties, and what equitable theories are most appropriate. Therefore, we must remand this case for the trial court to review under the various theories Vasquez asserts.
Vasquez presented claims for equitable relief under several theories, including meretricious relationship, implied partnership, and equitable trust. When equitable claims are brought, the focus remains on the equities involved between the parties. Equitable claims are not dependent on the "legality" of the relationship between the parties, nor are they limited by the gender or sexual orientation of the parties. For example, the use of the term "marital-like" in prior meretricious *738 relationship cases is a mere analogy because defining these relationships as related to marriage would create a de facto common-law marriage, which this court has refused to do. In re Marriage of Pennington, 142 Wash.2d 592, 601, 14 P.3d 764 (2000). Rather than relying on analogy, equitable claims must be analyzed under the specific facts presented in each case. Even when we recognize "factors" to guide the court's determination of the equitable issues presented, these considerations are not exclusive, but are intended to reach all relevant evidence. In a situation where the relationship between the parties is both complicated and contested, the determination of which equitable theories apply should seldom be decided by the court on summary judgment. In this case, the trial court must weigh the evidence to determine whether Vasquez has established his claim for equitable relief.
Because we remand this case for trial, we need not resolve the evidentiary issues raised by the estate concerning the deadman's statute. Any objection to specific testimony will be resolved at trial.

CONCLUSION
We vacate the decision of the Court of Appeals, reverse the trial court's granting of the motion for partial summary judgment, and remand this case for trial. Finally, an award of attorney fees, if any, should be determined at trial.
SMITH, MADSEN, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
ALEXANDER, C.J. (concurring).
I agree with the majority that we should remand this case to the trial court so that it may consider whether Frank Vasquez can establish any of his claims for relief under the equitable doctrines of implied partnership and equitable trust. I write separately simply to indicate my agreement with Justice Sanders' view that the meretricious relationship doctrine is unavailable to a party who seeks relief when, as is the case here, one party to the alleged meretricious relationship is deceased. I reach that conclusion because the meretricious relationship doctrine is limited in that the trial court is to apply, by analogy, the provisions of RCW 26.09.080[1] when it distributes the property of persons who have been living in a "marital-like relationship." Connell v. Francisco, 127 Wash.2d 339, 346, 898 P.2d 831 (1995); see also Gavin M. Parr, What is a "Meretricious Relationship"?: An Analysis of Cohabitant Property Rights Under Connell v. Francisco, 74 Wash. L.Rev. 1243 (1999). Indeed, we developed this equitable doctrine because the legislature has not provided a statutory means of resolving the property distribution issues that arise when unmarried persons, who have lived in a marital-like relationship and acquire what would have been community property had they been married, separate. See In re Marriage of Lindsey, 101 Wash.2d 299, 678 P.2d 328 (1984).
On the other hand, the laws of intestacy, RCW 11.04.015.290, dictate how property is to be distributed when an individual dies without leaving a will. Accordingly, we have held that the meretricious relationship doctrine's analogy to RCW 26.09.080 does not apply when a relationship between unmarried cohabitants is terminated by death of one cohabitant. Peffley-Warner v. Bowen, 113 Wash.2d 243, 253, 778 P.2d 1022 (1989). Thus, under the circumstances of this case, I would hold that the meretricious relationship doctrine is not an available form of equitable relief. The question of whether the doctrine has application when parties of the same sex separate after having lived together in a long-term stable relationship, we should leave to another day when that issue is properly before us.
For this reason I concur.
SANDERS, J. (concurring).
I concur with the majority that summary judgment favoring Frank Vasquez must be *739 reversed on the meretricious relationship claim. However, I write separately to set forth a legal analysis which, in my view, is insufficiently stated in the majority opinion.
I begin by crediting the obvious: summary judgment is appropriate only when the moving party establishes he is entitled to a judgment as a matter of law without material dispute of fact. CR 56(c).
Therefore for Vasquez to prevail on summary judgment it is necessary to establish, without material factual dispute, the existence of a meretricious relationship. This requires the prima facie presence of several factors:
Relevant factors establishing a meretricious relationship include, but are not limited to: continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties.
Connell v. Francisco, 127 Wash.2d 339, 346, 898 P.2d 831 (1995) (citing In re Marriage of Lindsey, 101 Wash.2d 299, 304-05, 678 P.2d 328 (1984) and Latham v. Hennessey, 87 Wash.2d 550, 554, 554 P.2d 1057 (1976)).
At the threshold "we must review and decide whether the trial court[] erred in concluding the facts gave rise to [a] meretricious relationship[] at all." In re Marriage of Pennington, 142 Wash.2d 592, 602, 14 P.3d 764 (2000). As stated in Pennington, this determination is "a mixed question of law and fact," the proper legal conclusions flowing from those facts being subject to de novo review. Id. at 602-03, 14 P.3d 764.
I agree with the majority that many of the traditional factors associated with the existence of a meretricious relationship, at least when considered in isolation, are certainly subject to material factual dispute in the record before us.
However there is one fact, that these individuals are of the same sex, which distinguishes this case from others preceding it. The legal consequence of this undisputed fact is central to the briefing of the parties as well as amici Northwest Women's Law Center and Lambda Legal Defense and Education Fund. Moreover, it is that fact which the Court of Appeals cited as determinative, prompting our review. Vasquez v. Hawthorne, 99 Wash.App. 363, 994 P.2d 240 (2000). Therefore the majority opinion, which avoids meaningful discussion of this issue, provides somewhat less satisfaction than can be obtained from kissing one's sister: the majority reverses the summary judgment in favor of Vasquez, remands for further proceedings consistent with its opinion, but fails to articulate potentially dispositive legal criteria to aid the trial court in its task.
A survey of existing case law, however, leads to the inexorable conclusion that there is only one possible outcome available to the trial court consistent with the law as we have previously defined it: dismissal of Vasquez's meretricious relationship claim. Notwithstanding, I agree with the majority, and disagree with the Court of Appeals, that remand is more appropriate than dismissal as the issue before us is whether summary judgment was properly granted to Vasquez, not whether summary judgment of dismissal was improperly denied to Joseph Hawthorne. Although Hawthorne obviously recognized the difference, as he set out both alternatives in his notice of appeal, any claim that summary judgment was improperly denied Hawthorne is not now properly before us because Hawthorne did not assign error to the denial of his cross motion. See RAP 10.3(a)(3). Although the court has discretion to overlook this defect (as did the Court of Appeals), State v. Olson, 126 Wash.2d 315, 323, 893 P.2d 629 (1995), it is equally the prerogative of the court to require adherence to its own rules, especially where dismissal of a single claim would not end the case in any event, as is the situation here. This is to say consideration of other theories by which Vasquez might recover would not be precluded by a dismissal of the meretricious relationship claim.
As to the merits of the meretricious relationship claim, I can do no better than defer to the unanimous and thoughtful opinion of the Court of Appeals.
For any claim to be premised upon a meretricious relationship, there must first of course be such a relationship. Our previous case law, little of which is cited in the majority *740 opinion, makes it abundantly clear that whether even uncontested facts satisfy the necessary requirements to establish such a relationship is a question of law subject to de novo review. In re Marriage of Pennington, 142 Wash.2d at 602-03, 14 P.3d 764.
The necessary but not sufficient requirement that the cohabitating couple possess the requisite legal ability to wed is quite pronounced. No case holds that even a cohabiting heterosexual couple can successfully establish a meretricious relationship where either lacks the legal entitlement to marry. I therefore posit if that is the requirement for a heterosexual couple, it must equally be the requirement for a homosexual couple.
Our most recent pronouncement on the subject, In re Marriage of Pennington, is instructive. One of the couples there cohabited continually for eight years between 1985 and 1993, although one of those cohabitants lacked the legal capacity to marry during most of that period, since he remained technically married to his prior wife until 1990. The fact of this legal disability to wed was identified on numerous occasions during the course of the opinion and, with respect to an evaluation of the traditional factors, was considered vis-a-vis the intent of the parties to form a meretricious relationship. We made special note that "Pennington was married to a different woman for the first five years of his relationship with Van Pevenage." In re Marriage of Pennington, 142 Wash.2d at 604, 14 P.3d 764. Similarly, the legal consequence of the other couple's cohabitation was also considered in that same proceeding. There the court also made special comment that "the evidence also established Chesterfield was married to another man during her relationship with Nash. These facts are too equivocal to conclusively establish that the parties mutually intended to be in a meretricious relationship." Id. at 606, 14 P.3d 764. These references, and like references in other cases, to the lawful ability to marry are not mere coincidence. Rather as Connell posits, the basis for distributing property following a meretricious relationship is identification of the property "that would have been characterized as community property had the parties been married." 127 Wash.2d at 350, 898 P.2d 831. The existence of a meretricious relationship therefore assumes, at least, the legal ability to marry because community property in our state may be created or accumulated only within the context of a marriage. According to Connell, a meretricious relationship rarely serves as an equitable ground to waive the formal marriage requirement to "allow the trial court to justly divide property the couple has earned during the relationship through their efforts without creating a common-law marriage or making a decision for a couple which they have declined to make for themselves. Any other interpretation equates cohabitation with marriage[ and] ignores the conscious decision by many couples not to marry." Id. Central to the doctrine, therefore, is at least the ability of the couple to make a decision to marry, absent actually making that decision. As Connell makes clear, the existence of various relevant factors must be established to sustain the legal conclusion that a meretricious relationship exists.
Although the presence of all the itemized factors may not be enough, absence of one or more of the factors is fatal, and the element of intent necessarily includes the lawful ability to marry.
Therefore when the majority says, "Even when we recognize `factors' to guide the court's determination of the equitable issues presented, these considerations are not exclusive, but are intended to reach all relevant evidence," I agree. Majority at 738. One of those factors to guide the court's determination is the factor of intent, which includes the lawful ability to marry. This factor must be considered. If the parties have the ability to marry, that does not mean a meretricious relationship exists; however, the inability to marry necessarily means that a meretricious relationship does not exist. The legal ability to marry is therefore necessary but not sufficient.
One sentence of dicta in the majority opinion is confusing:
Equitable claims are not dependent on the "legality" of the relationship between the parties, nor are they limited by the gender or sexual orientation of the parties.
*741 Majority at 737. This statement is literally accurate insofar as it refers to "equitable claims," which would include implied partnership and equitable trust. Majority at 737. It does not, however, include all equitable claims such as those premised upon a meretricious relationship where, obviously, members of the same sex lack the lawful authority to wed just as much as married people lack the lawful authority to enter into plural marriages, at least in the context of the laws of our jurisdiction.
Two further independent considerations equally point to the inevitable dismissal of the meretricious relationship claim by the trial court on remand.
The first consideration involves the unavailability of the meretricious relationship doctrine to relationships terminated by death. This court has never employed the doctrine to justify a post-demise distribution of property. In Peffley-Warner v. Bowen, 113 Wash.2d 243, 778 P.2d 1022 (1989), we answered the certified question in the negative, "`Would Washington law afford a person in Ms. Warner's situation the same status as that of a wife with respect to the intestate devolution of Sylvan Warner's personal property,'" id. at 245, 778 P.2d 1022 (footnote omitted), specifically opining that "Lindsey did not expand the rights of a surviving partner in an unmarried cohabiting relationship to the personal property of a deceased partner." Id. at 252, 778 P.2d 1022.
The second consideration dictating a similar result is a matter of practicality. Were it not the rule that the lawful ability to wed is a prerequisite to establishing a meretricious relationship, one of the few objective criteria of assistance to the court or cohabiting couples to determine whether such a relationship could possibly exist would simply vanish. Legitimate expectations of cohabiting individuals, whether opposite sex or otherwise, would be defeated in the sense that they would be even less secure in the possession or distribution of property to which they were lawfully entitled. In the context of this case, for example, Mr. Schwerzler could well have relied upon his expectation that a meretricious relationship could not possibly exist under the facts of this case to prompt his decision to cohabit with Mr. Vasquez, with whom Schwerzler might not have desired to share his property absent volitional inter vivos transfer of title or testamentary bequest. On the other hand, by the logic of the trial court, even if Schwerzler by will had specifically devised his property to close friends or relatives of his choice, that intention would be defeated as surely as dying intestate by application of the meretricious relationship doctrine. In short, although some may view this proceeding as an opportunity to vindicate the rights of cohabiting homosexuals (assuming these individuals are homosexuals), the unintended consequence would be to deny each of these partners the opportunity to dispose of his entitled assets as each saw fit, even upon demise. I should think this scenario would be ample reason to reconsider the benefits of the rule articulated in Creasman v. Boyle that property acquired by an individual, notwithstanding his or her living relationship short of marriage, in the absence of some trust relationship, "belongs to the one in whose name the legal title to the property stands." 31 Wash.2d 345, 351, 196 P.2d 835 (1948). Although I understand In re Marriage of Lindsey purported to overrule Creasman within a narrowly defined "`appropriate set of circumstances,'" Lindsey, 101 Wash.2d at 304, 678 P.2d 328 (quoting Latham v. Hennessey, 87 Wash.2d 550, 555, 554 P.2d 1057 (1976)), to sanction an ever-broadening set of circumstances to replace the traditional rule invites the very "unpredictable and at times onerous" considerations which were said to justify the limited exception to the Creasman rule in the first instance. In re Marriage of Lindsey, 101 Wash.2d at 304, 678 P.2d 328.
Certainty in one's entitlements, as well as the right of one to voluntarily dispose or transfer his or her property in the manner seen fit by the individual, are values promoted by the rule of law which should not be lightly discarded or carelessly obscured.
For these reasons I concur.
NOTES
[1] This statute provides that "[i]n a proceeding for dissolution of the marriage, ... the court shall... make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." RCW 26.09.080 (emphasis added).