[No. 55167-1-I. Division One. January 9, 2006.]

MICHAEL L. OLVER, *as Special Administrator, Respondent,* v. JULIE K. FOWLER, *as Special Administrator,* ET AL., *Appellants.*

*Stanley J. Rumbaugh* and *Terry J. Barnett* (of *Rumbaugh, Rideout & Barnett*), for appellants.

*Michael L. Olver*, for respondent.

¶1 ELLINGTON, J. — Washington common law applies equitable principles to determine ownership of property acquired during a meretricious relationship. Until they were killed in a car accident, the parties here shared such a relationship, raising a family, running a business, and owning property. The question here is whether equity applies to allocate the division of their property. Washington cases already apply the doctrine after death of one party. We hold it applies where both have died and affirm the probate court's equitable division of property.

## BACKGROUND

¶2 This case arises out of a tragic car accident that left all but three members of two families dead.[1] On July 4, 2003, the Ho and Nguyen families were vacationing together, traveling in a single sport utility vehicle. The driver, Cung Ho, swerved to avoid a rear-end collision with a car ahead of him and collided head on with a truck traveling in the opposite direction. The crash killed five of the vehicle's eight occupants on impact, including Cung, his life partner, Thuy Ho, and their daughter, Rebecca. Survivors included the Hos' son Harry, Vu Nguyen, and Nguyen's daughter, Dianna.

¶3 Cung and Thuy Ho had lived together for nearly 15 years, since 1988. They had a religious wedding ceremony in 1990, but never legally married. They built a business together, raised their children together, and were jointly

---

[1] In one family were the father and driver, Cung Van Ho, the mother, Thuy Thi Thanh Nguyen Ho, and two children, Rebecca and Harry. Only Harry survived. In the second family, mother Kathy Nguyen and daughter Dalena were killed. The father, Vu Nguyen and one daughter, Dianna, survived. For the sake of clarity, we refer to each individual in the Ho family by his or her first name and to Vu Nguyen by his last name.

listed on their automobile insurance policy. Neither owned substantial property before their relationship began, but by 2003, they owned their business, their home, three rental properties, and held assets in several bank accounts. All the property was held solely in Cung's name, and all of the property was initially inventoried in Cung Ho's estate.

¶4 Thuy was the sole beneficiary under Cung's will. Under the Simultaneous Death Act, chapter 11.05 RCW, Thuy is considered to have predeceased Cung, so Cung effectively died intestate.[2]

¶5 The only adult survivor of the accident, Vu Nguyen, filed a claim against Cung's estate on behalf of his surviving daughter Dianna, seeking damages arising from the accident.[3] He also intervened in Cung's probate.

¶6 Michael Olver, as administrator of Thuy Ho's estate, filed this action, seeking partition of the property between Cung's and Thuy's estates, apparently to ensure some financial security for the Hos' only surviving child, Harry. In May 2004, the trial court ruled on summary judgment that Cung and Thuy had shared a meretricious relationship and that an equitable property division would be determined at trial.

¶7 Representatives of both estates then participated in a mediation on the question of what property should be inventoried in Thuy's estate. The parties agreed the mediated outcome would be binding. Intervenor Nguyen did not participate, ostensibly because only the inventory itself was at issue. The mediation resulted in entry of agreed findings of fact, conclusions of law, and a judgment of disbursement transferring half the inventory to Thuy's estate.

¶8 Nguyen immediately moved to amend the judgment to prevent the transfer. Though he was permitted to inter-

---

[2] *In re Estates of Donnelly,* 81 Wn.2d 430, 433, 502 P.2d 1163 (1972).

[3] Nguyen also filed suit on his own behalf against Thuy's estate, contending that because Thuy and Cung had been partners in a meretricious relationship, her property should be subject to Cung's creditors' claims. The matter remains pending.

vene in Thuy's probate, his motion to amend the judgment was denied.

¶9 Nguyen appeals the denial of the motion to amend the judgment. Olver cross-appeals the order permitting intervention. Disbursement to Thuy's estate was stayed pending this appeal.

## ANALYSIS

 ¶10 *Intervention.* Under CR 24(a), an intervenor must make "timely application."[4] After a judgment is entered, intervention requires a strong showing considering all circumstances, including prior notice, prejudice to the other parties, and the length of and reasons for delay.[5] The rule, however, is liberally construed to favor intervention.[6] A trial court's determination of timeliness is reviewed for abuse of discretion.[7]

 ¶11 Nguyen did not seek to intervene in Thuy's probate until after his motion to amend the judgment drew an objection that he lacked standing to participate. He contended his status as intervenor in Cung's probate gave him standing in any action involving that estate, but he nonetheless moved to intervene in Thuy's estate. He attributed his delay to the fact that the personal representative of Cung's estate had adequately represented his interests until her nonintervention powers were revoked and asserted that he was not alerted that his interests diverged from those of Cung's estate until entry of the findings and conclusions derived from the mediation.

---

[4] "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." CR 24(a); *Columbia Gorge Audubon Soc'y v. Klickitat County*, 98 Wn. App. 618, 623, 989 P.2d 1260 (1999).

[5] *Kreidler v. Eikenberry*, 111 Wn.2d 828, 833, 766 P.2d 438 (1989).

[6] *Columbia Gorge*, 98 Wn. App. at 623.

[7] *Kreidler*, 111 Wn.2d at 832.

¶12 After extensive colloquy about the timing of the motion, the court found Nguyen's assertions both credible and adequate and permitted intervention. The decision was based on tenable grounds and was not an abuse of discretion.

■ ■ ¶13 *Recognition of Thuy's Property Rights.* Because Washington does not recognize common law marriage, the common law has developed a means of equitable distribution of property acquired by unmarried partners in committed intimate relationships[8] (often referred to as meretricious relationships[9]). Courts make a " 'just and equitable' " division of such property,[10] applying community property laws by analogy.[11] All property acquired during the relationship is "presumed to be owned by both parties."[12]

¶14 Equity goes only so far, however. Unlike the division of property upon dissolution of a marriage, when both community and separate property are before the court for equitable division, a court dividing property acquired during a committed intimate relationship may exercise its discretion only as to property that would have been community property had the parties been married.[13]

---

[8] *See, e.g., Vasquez v. Hawthorne*, 145 Wn.2d 103, 33 P.3d 735 (2001); *Pennington v. Pennington*, 142 Wn.2d 592, 14 P.3d 764 (2000); *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995); *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984); *In re Meretricious Relationship of Sutton*, 85 Wn. App. 487, 933 P.2d 1069 (1997).

[9] Various courts have sought an alternative to the phrase "meretricious relationships" to describe relationships which meet the legal standards for equitable property distribution. *See Peffley-Warner v. Bowen*, 113 Wn.2d 243, 246 n.5, 778 P.2d 1022 (1989); *In re Relationship of Eggers*, 30 Wn. App. 867, 871 n.2, 638 P.2d 1267 (1982). We share earlier courts' distaste for the antiquated term with its negative connotations, and substitute the phrase "committed intimate relationship."

[10] *Lindsey*, 101 Wn.2d at 304 (quoting *Latham v. Hennessey*, 87 Wn.2d 550, 554, 554 P.2d 1057 (1976)).

[11] *Connell*, 127 Wn.2d at 351; *Lindsey*, 101 Wn.2d at 306-07; *Latham*, 87 Wn.2d at 554.

[12] *Connell*, 127 Wn.2d at 350-51.

[13] *Id.* at 349-50.

¶15 The trial court found that Cung and Thuy Ho shared a meretricious relationship from 1988 or 1989 until their deaths in 2003. Nguyen does not challenge this finding. Rather, Nguyen asserts the doctrine permitting equitable division of property has never been applied where the relationship ends with death and that the rationale underlying the doctrine does not apply in such circumstances. A review of the cases, however, reveals that Nguyen is mistaken on both counts.

¶16 No Washington court has refused to apply the doctrine on grounds that one or both partners has died. The most recent Supreme Court ruling on this subject, *Vasquez v. Hawthorne*,[14] involved a claim by a surviving partner against the estate of the man with whom he lived and shared an intimate romantic relationship for many years. The Washington Supreme Court remanded for trial to determine whether their relationship constituted a meretricious relationship, a partnership, or an equitable trust.[15] Although two justices argued that the meretricious relationship doctrine should not apply after death of a partner, the majority drew no such distinction.[16] The court's ruling allowed the trial court on remand to award an equitable division of property to the surviving partner if a committed intimate relationship was found to have existed. Several other cases have involved determinations made after the death of one partner.[17]

---

[14] 145 Wn.2d 103, 33 P.3d 735 (2001).

[15] *Id.* at 107.

[16] *Id.* at 108-09, 114 (Alexander, C.J. and Sanders, J., concurring). The justices relied upon *Peffley-Warner* for the proposition that the doctrine does not apply after death. *Id.* at 109, 114. We observe that in *Peffley-Warner*, the doctrine was applied in the probate proceedings. The question before the Supreme Court involved only eligibility for statutory benefits reserved to widows, not the equitable doctrine governing property ownership by committed intimate partners. *Peffley-Warner*, 113 Wn.2d at 245. We discuss *Peffley-Warner* later in this opinion.

[17] *See Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948), *overruled by In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984) and *Vasquez v. Hawthorne*, 99 Wn. App. 363, 994 P.2d 240 (2000). *See also Latham*, 87 Wn.2d at 551; *Peffley-Warner*, 113 Wn.2d at 244.

¶17 None of these courts showed any reluctance to apply the doctrine after death, and a review of the development of the doctrine demonstrates there is no such limitation.[18]

¶18 Washington first recognized a nontitleholder's rights in property accumulated by joint efforts in the "innocent spouse" cases, involving partners who believed they were married.[19] Initially, the doctrine applied only where the parties chose to end their relationship.

¶19 In *In re Brenchley's Estate*,[20] the Washington Supreme Court announced that an equitable doctrine available to living partners should also be available where one party has died. The *Brenchley* court held that a woman who believed she was married to her deceased longtime domestic partner was entitled to an equitable property division, reasoning that since the property would have been divided equitably had the deceased man still lived, the man's heirs could not have "better rights" simply because of his death.[21]

¶20 In time, a similar equitable doctrine emerged to recognize property entitlements of partners fully aware of their unmarried status.[22] When first presented with the question, our Supreme Court ruled that in the absence of evidence to the contrary, whichever partner held title to the property would be presumed its rightful owner.[23] This rule,

---

[18] The parties debate the import of *In re Estate of Thornton*, 81 Wn.2d 72, 499 P.2d 864 (1972) and *Humphries v. Riveland*, 67 Wn.2d 376, 407 P.2d 967 (1965). Both cases involved unmarried committed partners and a surviving partner who advanced alternative equitable theories, including implied contract, implied trust, partnership, and joint venture, as the basis for equitable property distribution. Since neither court relied upon the theory of meretricious relationship equity, the cases do not assist us in answering whether the doctrine applies here. *Thornton*, 81 Wn.2d at 79 (implied partnership); *Humphries*, 67 Wn.2d at 382 (contract).

[19] *Buckley v. Buckley*, 50 Wash. 213, 216, 96 P. 1079 (1908); *see also Knoll v. Knoll*, 104 Wash. 110, 114, 176 P. 22 (1918).

[20] 96 Wash. 223, 226, 164 P. 913 (1917).

[21] *Id.*

[22] *Lindsey*, 101 Wn.2d at 304.

[23] *Creasman*, 31 Wn.2d at 357.

labeled the *"Creasman* presumption," was often cited, rarely applied, and roundly criticized.[24]

¶21 In *Lindsey*, the court recognized that "[i]n application, the *Creasman* presumption has been restricted to its own particular facts—one party dead and the other silenced by the deadman's statute,"[25] with the result that the presumption "made the law unpredictable and at times onerous."[26] The court formally overruled the *Creasman* presumption and adopted a general equitable theory of joint ownership of property acquired during the relationship, regardless of titleholder.[27]

¶22 The most direct effect of removing the *Creasman* presumption was to permit equity to divide property after death of one partner without reference to title.

¶23 The two justices who concurred in *Vasquez* relied on *Peffley-Warner v. Bowen*[28] for the proposition that the doctrine does not apply after death. As indicated above, the majority in *Vasquez* was unmoved by this argument. It is useful, however, to review *Peffley-Warner* to see whether it has any different force here.

¶24 After the death of Sylvan Warner, a Spokane probate court made an equitable distribution of the parties' joint property to his meretricious relationship partner. But the court denied her claim for statutory surviving spouse benefits under RCW 11.52.010.[29]

---

[24] *See, e.g., Latham*, 87 Wn.2d at 555 (" '*Creasman* should be overruled and its archaic presumption invalidated.' " (quoting *In re Estate of Thornton*, 81 Wn.2d 72, 79, 499 P.2d 864 (1972))).

[25] *Lindsey*, 101 Wn.2d at 302; *see also Poole v. Schrichte*, 39 Wn.2d 558, 563, 236 P.2d 1044 (1951) ("We have on but three occasions actually left the parties to a relationship known by both parties to be meretricious, in the position in which they had placed themselves. In each instance one of the parties . . . was dead, which . . . suggests that the difficulty of producing evidence of contrary intent is the reason [for that result]." (citations omitted)).

[26] *Lindsey*, 101 Wn.2d at 304.

[27] *Id.*

[28] 113 Wn.2d 243, 253, 778 P.2d 1022 (1989).

[29] *Id.* at 252.

¶25 Peffley-Warner then filed a claim for Social Security widow's benefits, contending that she qualified as the widow of Warner under the Social Security Act *"because she would be entitled to a wife's share of Mr. Warner's personal property under Washington laws of intestate devolution."*[30] Her claim was denied, and ultimately the Ninth Circuit certified this question to the Washington Supreme Court: "Would Washington law afford a person in Ms. Warner's situation the same status as that of a wife with respect to the intestate devolution of Sylvan Warner's personal property?"[31] Our court held that "a surviving partner in a 'meretricious' relationship does not have the status of a widow with respect to intestate devolution of the deceased partner's personal property."[32]

¶26 The court made clear that a meretricious relationship partner does not take under the intestacy statutes:

> [B]ecause appellant is not a "spouse," she cannot receive a share of the estate of Sylvan F. Warner under the intestate succession laws of the state of Washington.
>
> . . . The division of property following termination of an unmarried cohabiting relationship is based on equity, contract or trust, and not on inheritance.
>
> Appellant Marilyn E. Peffley-Warner is neither a surviving spouse nor an heir to decedent Sylvan F. Warner. She is therefore not entitled to share in the decedent's estate under Washington laws of intestate succession, RCW 11.04.015.[33]

The court's ruling adhered to the statutory scheme and to the limits of the meretricious relationship doctrine, which has never conferred spousal status.[34]

¶27 But we do not look to the intestacy statutes to determine what the decedent owned. Thuy's estate does not

---

[30] *Id.* at 245 n.3 (emphasis added).

[31] *Id.* at 244 (footnote omitted).

[32] *Id.* at 253.

[33] *Id.* (footnote and citation omitted).

[34] *See Connell*, 127 Wn.2d at 349-50 (only joint property, not personal property, available for equitable distribution).

seek a widow's share, nor assert any claim on her behalf. It seeks only recognition that at the time of her death, Thuy owned certain property. The court identified that property by analogy to community property principles. This is the property upon which the statutes will ultimately operate.

¶28 Each spouse in a marriage has a present, vested, undivided, one-half interest in the community property.[35] The death of one spouse does not generate a new right or interest in the surviving spouse; rather, the survivor already owns half the property, and that interest is neither created nor extinguished by the other spouse's death.[36] At the moment of death, the community ends and the property becomes the separate property of each.[37] Thus, when a married person dies, the surviving spouse immediately owns half the community property as his or her separate property. This is true whether or not the decedent dies intestate.[38]

¶29 Applying community property principles by analogy, each partner in a meretricious relationship owns an undivided interest in the joint property.[39] After a partner dies, that partner's share is the estate upon which inheritance rules will operate. Because all the Hos' property was joint property, all their property is equitably divided between their estates.

¶30 Nguyen contends the result should be different here because *both* partners died. He argues that the doctrine's purpose is personal to the partners, and its benefits must be claimed by them personally. But the doctrine does not operate to *alter* property ownership at the moment the relationship ends; rather, it operates to *recognize* ownership

---

[35] *Lyon v. Lyon*, 100 Wn.2d 409, 413, 670 P.2d 272 (1983).

[36] *Id.*; *In re Estate of Coffey*, 195 Wash. 379, 382, 81 P.2d 283 (1938).

[37] *In re Estate of Politoff*, 36 Wn. App. 424, 426-27, 674 P.2d 687 (1984).

[38] *See id.* (decedent spouse owned only one-half of the community funds at the moment of her death); RCW 26.16.030(1) ("Neither spouse shall devise or bequeath by will more than one-half of the community property.").

[39] *See Vasquez*, 145 Wn.2d at 107.

rights acquired during the relationship. Thuy's entitlement preceded her death and is not overcome or diminished by the mere circumstance that she did not survive the accident. Death does not divest her of her property just because her ownership was not judicially recognized during her life.

¶31 It is certainly the case that the doctrine seeks to accomplish a fair result between the parties and to avoid unjust enrichment of one partner.[40] We reject Nguyen's theory that any need for such fairness ends with death. The right to devise one's property and thereby transfer accumulated wealth is one of our society's most firmly guarded individual rights. There is no equitable reason, as between the parties, to cause a different result where a party no longer has personal need of the property. Unjust enrichment does not become more fair because one or both of the parties dies.

¶32 Nor does the interest of third parties affect the analysis. Nguyen alleges that Thuy Ho's estate sought partition in an attempt to place half of the Hos' joint assets beyond the reach of Cung Ho's creditors. This argument is not germane. The only question here is whether the property is subject to equitable division.[41]

¶33 We hold that where unmarried, committed intimate partners are separated by death, as when they separate during life, any property acquired during the relationship that would have been community property is jointly owned and subject to a just and equitable division. The trial court

---

[40] *See Connell*, 127 Wn.2d at 349 ("property acquired during the relationship should be before the trial court so that one party is not unjustly enriched at the end of such a relationship" (citing *Peffley-Warner*, 113 Wn.2d at 252)); *Peffley-Warner*, 113 Wn.2d at 252 (*Lindsey* "recognized the contributions made by both parties to the purchase and maintenance of the property and, through an equitable division of the property . . . sought to avoid unjust enrichment of one partner at the expense of the other").

[41] Whether tort claims against one unmarried partner (Cung) may be made against the estate of the other partner (Thuy) on a theory of joint tort liability is an issue raised tangentially in Nguyen's brief and oral argument. The trial court did not rule on this question, and we do not address it. RAP 2.2(a)(1). As indicated in note 3 above, the issue is pending in Nguyen's suit against Thuy's estate.

correctly applied this rule in its judgment of disbursement. We affirm.

Cox, C.J., and APPELWICK, J., concur.

Review granted at 158 Wn.2d 1006 (2006).