# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of<br><br>JACK L. FRANKS, a/k/a JACKIE LEE LEWIS FRANKS,<br><br>               Deceased. | No. 60728-0-II |
| SECURITY STATE BANK, Personal Representative of the Estate of Jack L. Franks,<br><br>            Respondent,<br><br>   v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF REVENUE,<br><br>           Appellant. | PUBLISHED OPINION |

GLASGOW, J.—Jack Franks and Anneliese Roldan were in a committed intimate relationship for 40 years. When Franks passed away, he had a valid will. Franks left most of his assets to Roldan, the rest to his grandsons, and one dollar to his son. Franks' son contested the will and sought to have it invalidated. Roldan responded by filing a petition under the Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96A RCW.

Franks' son, grandsons, and Roldan were able to reach a settlement agreement in the TEDRA action. The agreement established that Franks and Roldan were in a committed intimate

relationship and that all property acquired during the relationship was community-like property.[1] The total value of the couple's assets was determined to be about $8.3 million, and Franks and Roldan each had a one-half interest in the assets, totaling about $4.15 million.

The Estate filed its estate taxes. On the tax return, the Estate claimed the gross estate, minus exclusions, was about $4.13 million. The Department of Revenue disagreed, asserting that Franks' estate at the time of death included the entire $8.3 million and Roldan's one-half interest was distributed to her *after* Franks' death. The Department found that the Estate owed about $824,000 in tax and interest.

The Estate objected to the Department's findings in another TEDRA petition. The trial court held a hearing, overruled the Department's findings, concluded that Roldan's one-half interest was not part of Franks' estate at the time of death, and determined the Estate owed no additional taxes.

The Department appeals, arguing that the trial court erred when it determined that Roldan had an undivided one-half interest in the property acquired during her committed intimate relationship with Franks and that her one-half interest was not part of Franks' taxable estate. The Department also argues that Roldan's TEDRA petition was not a valid claim that was deductible from Franks' taxable estate.

We hold that the trial court correctly applied the committed intimate relationship doctrine. Roldan had an undivided one-half interest in the community-like property when it was acquired during the relationship prior to Franks' death, her interest became her separate property upon

---

[1] The TEDRA petition, agreement, and order use the term "community property," but the Estate clarifies on appeal the correct term was "community-like property." Clerk's Papers at 105.

Franks' death, and therefore it was not part of Franks' taxable estate. We also affirm based on the alternative argument that Roldan's TEDRA petition is a legal, valid, and deductible claim because it was a claim that arose from an obligation imposed by Washington common law. We award attorney fees to the Estate on appeal in an amount to be determined by this court's commissioner.

FACTS

I. BACKGROUND

A.    Jack Franks' Will and His Death

In 2005, Jack Franks executed a will. The will listed Anneliese Roldan, a "very special friend with whom I have lived for thirty years," as a beneficiary. Ex. 101 at 2. Franks left three parcels of real property, one investment account, and twelve cars to Roldan. The will also identified Franks' son, Jackie Franks, Jr., and two grandsons. Due to a falling out with his son, Franks only left him one dollar. The will left the remainder of the estate to Franks' two grandsons.

Franks passed away more than a decade later in August 2017. At the time of his death, Franks had been in a committed intimate relationship with Roldan for 40 years, but all of the couple's property was titled in Franks' name. The Department of Revenue does not dispute the existence of the committed intimate relationship or the length of the relationship. Nor does the Department dispute that all of the couple's property at the time of his death was acquired during the committed intimate relationship.

The trial court entered an order admitting the will into probate and appointing a bank as the administrator of the estate.

B.      Will Challenge and TEDRA Petition

Franks' son contested the will. Franks' son sought to have the will invalidated in order to have Franks' estate pass according to the laws of intestate succession. Franks' son also filed a creditor's claim, asserting Franks owed him for unpaid work. Franks' grandchildren disputed the challenge and asked that the estate be distributed according to the will.

Roldan responded by filing a TEDRA petition. Roldan sought findings that she and Franks were in a committed intimate relationship, and as a result of their relationship, all property acquired during the relationship was community-like property subject to division between Franks' estate and Roldan.

C.      TEDRA Petition Agreement and Order

Several months later, all of the parties reached an agreement. The agreement stated that Franks and Roldan were in a committed intimate relationship. The agreement also concluded that all of the assets, including some that were not originally listed in the will, were acquired during the relationship and thus they were the "community property" of Franks and Roldan. Ex. 105 at 6. The agreement stated that the total value of the assets was $8,308,196.85, and Franks and Roldan each had an undivided one-half interest in the assets, totaling $4,154,098.43.

A month later, the trial court filed an order approving the agreement. The order stated that the agreement set forth a "mutually agreed legal basis to establish the community property interest of [Roldan] in all assets of the estate." Ex. 106 at 2.

D.      Estate Tax Proceedings

Then the Estate filed its tax return. On line one of the tax computation section, the Estate claimed the total gross estate less exclusions was $4,127,801.00. The Estate listed Roldan as a

4

surviving spouse even though the Estate marked Franks as "divorced" for marital status. Ex. 108 at 1. For each schedule attachment that described the estate's property, the Estate listed "Less 50% Community Property: Interest of surviving spouse" and deducted half the value for each respective piece of property. Ex. 108 at 15-18.

The Department sent a letter to the administrator of the Estate. The letter stated that the Department would honor the TEDRA agreement for the purposes of finding that Franks and Roldan were in a committed intimate relationship but would not honor the agreement that the property was community property. The Department wrote that characterizing it as community property was contrary to both statute and case law. Rather, property acquired during a committed intimate relationship was "'community-property-like.'" Ex. 111 at 1. And because Franks and Roldan were not married, all assets should have been considered the sole property of Franks at the time of his death for the purposes of calculating the gross estate.

After the Estate and the Department exchanged communications for more than two years arguing about whether the gross taxable estate included Roldan's undivided one-half interest in the property accrued during the relationship, the Department filed its findings of tax due in superior court. The Department determined the Estate owed $823,920.49 in additional tax, including interest accrued.

## II. PROCEDURAL HISTORY

### A. The Estate's Objections to the Department's Findings of Tax Liability

The Estate objected to the Department's findings and initiated a petition under TEDRA, specifically RCW 11.96A.080 and .090. The Estate argued that it properly filed its taxes and that "Washington law clearly holds that a committed intimate partner holds an undivided half-interest

in community-like property that severs immediately upon death." Clerk's Papers (CP) at 13. First, the Estate argued that under the committed intimate relationship doctrine, Roldan's share of community-like property vested immediately at Franks' death. Alternatively, it argued that Roldan's TEDRA claim to her one-half share was a valid and enforceable claim that is deductible.

The Estate mainly relied on *Olver v. Fowler*. 131 Wn. App. 135, 126 P.3d 69 (2006) (*Olver* I), *aff'd*, 161 Wn.2d 655, 168 P.3d 348 (2007). In *Olver* I, two partners, Cung and Thuy, were in a committed intimate relationship. *Id.* at 141. Tragically, they simultaneously died in a car accident. *Id.* at 137. All of the property they had acquired during their relationship was held solely in Cung's name and initially inventoried in Cung's estate. *Id.* at 138. Thuy's personal representative contested Cung's estate inventory. *Id.* The Court of Appeals held that the committed intimate relationship doctrine operates to recognize property interests acquired during the relationship, so Thuy had an undivided one-half interest in the community-like property. *Id.* at 146. The court said that "[a]pplying community property principles by analogy, each partner in a [committed intimate relationship] owns an undivided interest in the joint property. After a partner dies, that partner's share is the estate upon which inheritance rules will operate." *Id.* at 145.

The Washington Supreme Court affirmed this holding and said,

> In a marriage, each spouse has a present, undivided interest in the couple's community property. By analogy to community property law, Thuy had an undivided interest in the couple's jointly acquired property, even though it was titled in Cung's name. The death of one or both partners does not extinguish that right; Thuy's estate merely steps into her shoes.

*Olver v. Fowler*, 161 Wn.2d 655, 670-71, 168 P.3d 348 (2007) (*Olver* II) (citation omitted).

Relying on this reasoning in *Olver* II, Franks' estate concluded it only had a one-half interest in the couple's property that was reportable and subject to estate tax. The Estate also made

an alternative argument that Roldan's assets were deductible from Franks' estate as a claim under the Internal Revenue Code, 26 U.S.C. § 2053. The Estate argued that a "petition to obtain a portion of community-like property from a deceased person's estate is a valid claim under Washington law" and Roldan's TEDRA petition was therefore a valid claim that had to be excluded from the gross taxable estate. CP at 18.

B.      The Department's Response

The Department responded, relying on the history of the committed intimate relationship doctrine and arguing for its narrow application. The Department argued that the doctrine was created only to equitably distribute property to prevent unjust enrichment at the end of a committed intimate relationship, not to "permit a tax windfall not authorized by law." CP at 207 (boldface omitted). The Department argued that *Olver* II "is simply another application of the committed intimate relationship doctrine in the context of an equitable property distribution." CP at 210. The Department emphasized that Washington courts have "repeatedly refused to expand the doctrine beyond the context of property distributions" between the parties in the relationship. CP at 209. The Department cited a handful of cases to demonstrate the limited application of the doctrine to equitable means of property distribution. *See, e.g. Peffley-Warner v. Bowen*, 113 Wn.2d 243, 244-45, 778 P.2d 1022 (1989); *Davis v. Emp't. Sec. Dep't*, 108 Wn.2d 272, 278, 737 P.2d 1262 (1987); CP at 209.

The Department also rejected the Estate's alternative argument that Roldan's TEDRA petition was a claim that qualified for a deduction. The Department argued that Roldan did not submit a bona fide claim against the Estate. And procedurally, the Estate never actually claimed a deduction on its tax returns.

C.      Trial Court Decision

The trial court held a hearing under the summary adjudication provisions in TEDRA. The trial court agreed with the Estate that the issue was really about who had a property interest, not property distribution and, under *Olver* II, it was clear that each party in the committed intimate relationship had a one-half interest in the property obtained during the relationship at the time of Franks' death. Thus, his estate did not contain Roldan's one-half interest in the property acquired during the 40-year relationship. The trial court overruled the Department's findings, declared the Estate had fully paid all estate tax due, and denied the Estate's request for attorney fees.

The Department appeals.

ANALYSIS

The Department appeals the trial court's order concluding no additional tax was due. The Department does not dispute that Franks and Roldan were in a committed intimate relationship for more than forty years and that all of the property titled in Franks' name when he died was acquired during their committed intimate relationship. Thus, the parties agree there are no facts in dispute.

The Department argues the trial court erred when it determined that Roldan had an undivided one-half interest in the property acquired during the couple's committed intimate relationship, and that when Franks died, Roldan's one-half interest did not flow into Franks' taxable estate. The Department also argues Roldan's TEDRA petition was not a valid claim that is deductible from the estate. We disagree with the Department as to both arguments.

I. BURDEN AND STANDARD OF REVIEW

A taxpayer seeking relief from a tax obligation has the burden of proving that the Department of Revenue incorrectly assessed the tax. *See* RCW 82.32.180; *FPR II, LLC v. Dep't of Revenue*, 16 Wn. App. 2d 706, 713, 482 P.3d 320 (2021).

Questions of law and orders granting judgment based on issues of law are reviewed de novo. *In re Est. of Hambleton*, 181 Wn.2d 802, 817, 335 P.3d 398 (2014). How a statute applies to the facts is also a question of law reviewed de novo. *See Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011).

II. APPLICATION OF COMMITTED INTIMATE RELATIONSHIP DOCTRINE TO ESTATE TAXES

A.     Estate Tax Scheme

"Because of the legislature's decision to incorporate much of the federal estate tax scheme, the starting point when analyzing an estate tax in Washington is the federal taxable estate." *Est. of Ackerley v. Dep't of Revenue*, 187 Wn.2d 906, 911, 389 P.3d 583 (2017). The "Washington taxable estate" is defined as "the federal taxable estate." RCW 83.100.020(15). In turn, "federal taxable estate" is defined as "the taxable estate as determined under chapter 11 of the internal revenue code." RCW 83.100.020(6).

The federal taxable estate is calculated by determining the value of the gross estate less applicable deductions. 26 U.S.C. § 2051. The value of the gross estate of the decedent "shall be determined by including to the extent provided for in this part, the value at the time of [their] death of all property, real or personal, tangible or intangible, wherever situated," 26 U.S.C. § 2031(a), and "shall include the value of all property to the extent of the interest therein of the decedent at the time of [their] death." 26 U.S.C. § 2033. In determining the value of the taxable estate for

purposes of calculating the amount of estate tax owed, the tax code allows a deduction for "claims against the estate . . . as are allowable by the laws of the jurisdiction . . . under which the estate is being administered." 26 U.S.C. § 2053(a)(3).

B.    Committed Intimate Relationship Doctrine

A "committed intimate relationship" is a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). To determine if a committed intimate relationship exists, a court will weigh factors such as continuous cohabitation, length of relationship, purpose of relationship, pooling of resources, and the intent of the parties. *Id.* at 346. These factors are not exhaustive. *Id.* "[A]ll property acquired during a [committed intimate relationship] is presumed to be owned by both parties." *Id.* at 351. When a committed intimate relationship ends, the court requires a "just and equitable distribution" of any property acquired during the relationship. *Id.* at 347.

As discussed above, the Washington Supreme Court applied the committed intimate relationship doctrine in *Olver* II where a couple, Cung and Thuy, simultaneously passed away in a car accident. 161 Wn.2d at 657-58. The Washington Supreme Court held that despite the fact that all of the couple's property was titled in Cung's name, Thuy's estate contained one-half of the property acquired during the relationship upon their death, while Cung's estate contained the other half. *Id.* at 672-73.

C.      Application of the Doctrine When One or Both Partners Have Died

The Department contends that the trial court erred by applying the committed intimate relationship doctrine so that Roldan's one-half interest reduced Franks' gross estate value for the purposes of estate taxation. The Department raises multiple potential consequences of adopting the Estate's position. First the Department states the trial court ignored the conscious decision by many couples to not marry, potentially upending predictable estate planning. Second, the Department expresses concern about the future burden on the Department should it have to determine whether a committed intimate relationship existed in order to allow estate tax reductions. Third, the Department says applying the doctrine in the manner the Estate suggests would create unintended legal consequences regarding an as-yet-undefined property right.

The Estate responds that the Washington Supreme Court decided in *Olver* II that the estate of each partner in the committed intimate relationship obtained an undivided one-half interest in the property accumulated during the relationship upon their simultaneous death, regardless of how the property was titled. Therefore, the Estate argues, the estate of one partner in a committed intimate relationship does not contain the full interest in community-like property at the time of death. Rather upon death, the estate contains one-half of all assets acquired during the relationship. We agree with the Estate.

In *Olver* II*,* the Washington Supreme Court made a point to affirm the "well reasoned" opinion of the Court of Appeals. 161 Wn.2d at 658. The Court of Appeals used language that recognized the committed intimate relationship doctrine does not operate to *alter* property interests at the moment the relationship ends, rather it recognizes property interests acquired during the relationship. *Olver* I, 131 Wn. App. at 145-46. For example, the Court of Appeals stated that

11

Thuy's entitlement to her share of the property "preceded her death, and [was] not overcome or diminished by the mere circumstance that she did not survive the accident." *Id.* at 146.

The Court of Appeals applied community property principles by analogy to hold that "each partner in a [committed intimate relationship] owns an undivided interest in the joint property. After a partner dies, that partner's share is the estate upon which inheritance rules will operate." *Id.* at 145. The Supreme Court then emphasized that Thuy had an undivided interest despite the couple's property being titled in Cung's name. *Olver* II, 161 Wn.2d at 670. "The death of one or both partners does not extinguish that right; Thuy's estate merely steps into her shoes." *Id.* at 670-71.

Similarly, here, Roldan's property interest preceded Franks' death. Although Roldan had to use the procedural mechanism of a TEDRA petition to enforce her rights, that does not mean she was not always entitled to a one-half interest of property acquired during the relationship, both before Franks' death and at the moment of his death. Applying the doctrine here is not an expansion of *Olver* II; it is an application of *Olver* II's reasoning. While only one partner has passed away in this case, the same principles apply. Like Thuy, Roldan had a right that existed during her committed intimate relationship with Franks.

The Department implies that because Roldan did not obtain formal legal acknowledgment of her interest in the property until it was distributed *after* Franks' death, her interest should have no bearing on the computation of estate tax that is based on the estate's value upon death. However, that argument is belied by language the Supreme Court adopted in *Olver* II. It states that only "*after* the contents of the estate are established can the personal representative distribute the contents of the estate according to a valid will or the rules of intestacy. . . . Once a decedent's share is

determined, 'that partner's share is the estate upon which the inheritance rules will operate.'" *Olver II*, 161 Wn.2d at 669 (quoting *Olver* I, 131 Wn. App. at 145). And "In a marriage, each spouse has a *present*, undivided interest in the couple's community property. By analogy to community property law, Thuy had an undivided interest in the couple's jointly acquired property, even though it was titled in Cung's name." *Id.* at 670 (emphasis added) (citation omitted). The committed intimate relationship and the interests in property acquired during the relationship do not spring to life only at the moment when a judge declares a committed intimate relationship existed, as the Department suggests. The *Olver* II court's language and reasoning assume both partners in a committed intimate relationship have an undivided, one-half interest in the community-like property during the relationship. And when a partner dies, their estate contains that partner's one-half interest. *See id.* at 669-70.

The Department relies on *Peffley-Warner* to argue that Washington courts have refused to expand the committed intimate relationship doctrine beyond the context of property distributions that occur after the end of a relationship. Br. of Appellant at 28; *Peffley-Warner*, 113 Wn.2d at 244-45. The Washington Supreme Court has long recognized that separate "property owned by one of the parties prior to the [committed intimate relationship] and property acquired during the [committed intimate relationship] by gift, bequest, devise, or descent with the rents, issues and profits thereof, is not before the court for division." *Connell*, 127 Wn.2d at 351. Thus, unlike a spouse, a partner in a committed intimate relationship cannot ask a court to equitably distribute a portion of the other partner's separate property at the end of a relationship.

While the Department is correct that the committed intimate relationship doctrine does not confer *all* the rights and benefits of married spouses to committed intimate partners, the

Department is incorrect that the facts of *Peffley-Warner* are consistent with the situation here. In *Peffley-Warner*, the court declined to equate a surviving partner in a committed intimate relationship to a spouse under intestate succession laws because the surviving partner of the committed intimate relationship sought entitlement to the separate property of the deceased partner that a spouse would be entitled to. 113 Wn.2d at 244-45, 253. Here, Roldan only sought confirmation of her own interest in the community-like property the couple acquired together during the committed intimate relationship. Roldan never sought a widow's share or a portion of separate property that only a spouse would be entitled to.

Essentially, the Department alleges that the trial court erred when it treated Roldan like a spouse. The Department relies on *Olver* II to argue that the courts have "carefully distinguished" between an equitable interest in property and a legal interest. However, the *Olver* II court's discussion of *Peffley-Warner* does not support the Department's argument:

> The dissent ignores the *Peffley-Warner* court's distinction between equitable division of property jointly acquired during the relationship and the distribution of property that was owned by the deceased partner by way of intestacy. As discussed in more detail below, this case involves the initial distribution of jointly acquired property between committed intimate partners.

*Olver* II, 161 Wn.2d at 667 n.7. Like in *Olver* II*, this case involves the division of community-like property acquired during the relationship by operation of law upon a partner's death, not any claim to other property that was not community-like in character. The Estate is clear that it does not ask us to grant spousal rights to Roldan, which could encompass an interest in separate property or in a portion of Franks' one-half interest in the couple's property. Again, the Estate's argument and the trial court's holding only sought to honor Roldan's one-half interest in community-like property acquired during the relationship.

D.      The Department's Additional Arguments

The Department raises three additional arguments as to why the trial court's application of the committed intimate relationship doctrine here was in error. All of these arguments fail.

1.      The conscious decision not to marry

First, the Department argues that the trial court "'ignore[d] the conscious decision by many couples not to marry'" and would equate committed intimate relationships with marriage Br. of Appellant at 37 (quoting *Connell*, 127 Wn.2d at 350).

This argument ignores that the trial court merely followed what the Washington Supreme Court held more than 15 years ago in *Olver* II. Partners come to the decision of whether or not to marry based on innumerable factors. That does not change the fact that a person in a committed intimate relationship is entitled to an undivided one-half interest in jointly acquired community-like property during the relationship, regardless of how the property is titled. And as discussed above, Roldan did not seek any additional property interest that only a spouse would be entitled to.

2.      The burden of determining if committed intimate relationships exist

Second, the Department argues that applying the doctrine to estate taxes would put a burden on the Department in future cases to investigate whether a committed intimate relationship existed. The Department theorizes that a partner and estate of another partner could agree via settlement that a committed intimate relationship existed, without any court approval. Should that happen, the Department would have the burden to inquire into the "intimate details of cohabitating partners' interpersonal relationship and their finances." Br. of Appellant at 39.

This argument is overblown. While the Department may have to make these factual inquiries in order to determine tax liability, it is not beyond the scope of the Department's responsibilities to do just that. The Department often makes similarly complicated factual determinations in other contexts, for example, to determine whether a business qualifies for a certain B&O tax deduction or reduced tax rate. *See, e.g., Wash. Imaging Servs., LLC*, 171 Wn.2d at 554-55. Also, an estate would have the burden of presenting facts to support its assessment of the value of the gross taxable estate at the time of death, as the Estate did here, and a surviving partner in a committed intimate relationship could seek a trial court determination under TEDRA as Roldan did here.

### 3.      New type of property interest

The Department's third argument is that by allowing the application of the committed intimate relationship doctrine in this context, we would be creating "unintended legal consequences regarding property rights." Br. of Appellant at 40. The Department contends that the committed intimate relationship doctrine only creates a presumption of community-like property that can be overcome. Thus, a partner's property interest does not arise until a court determines that the property is indeed community-like.

But, again, we are not creating a new type of property interest. We are recognizing, as *Olver* II did, that each partner in the committed intimate relationship has an undivided one-half interest when the property is acquired, even if the property is titled in only one partner's name. These principles are not new. Moreover, the presumption that arises can only be rebutted by evidence that the property in question was in fact separate property or traceable to separate property. *Connell*, 127 Wn.2d at 352. Thus, application of the presumption is more about

determining what property is community-like and what is not, rather than determining the interests that arise in community-like property or when a partner's property interest attaches. Thus, the fact that a presumption must be applied does not undermine the legal consequence of the fact that certain property is community-like.

Finally, the Department expresses concern that a person in a long-term stable relationship will not be able to predict whether the property they acquire during the relationship is community-like or separate property. But nothing prevents a couple from entering into an agreement to resolve this issue, just as married couples can enter into agreements that define what property is community property and what is not. *See Higgins v. Stafford*, 123 Wn.2d 160, 161-62, 866 P.2d 31 (1994).

E.    Conclusion

Ultimately, the Department wants us to treat Roldan's entitlement to her one-half interest in the property as a claim to a portion of Franks' estate, rather than a property interest that existed during the relationship, prior to, and upon Franks' death. But based on *Olver* II and *Peffley-Warner*, we disagree. As a partner in a committed intimate relationship, Roldan had a property interest in jointly acquired community-like property when Franks was alive and at the moment of his death. The TEDRA settlement simply recognized her property interest. The fact that a court may equitably distribute property between committed intimate partners *after* death has no bearing on the computation of estate tax, which depends on the value of the estate at the moment of death. And under the Supreme Court's decision in *Olver* II, at the moment of Franks' death, Franks' estate did not contain Roldan's one-half interest in the property acquired during their relationship. Thus, the trial court did not err in finding that Roldan's one-half of the jointly acquired property

17

was not a part of Franks' gross estate to which the estate tax applied. RCW 83.100.020(6); 26 U.S.C. §§ 2031(a), 2033.

### III. TEDRA PETITION AS A DEDUCTIBLE CLAIM

The Department also contends that Roldan's TEDRA petition was not a valid claim of deduction. Instead, the Department argues that Roldan made a claim "'for a portion of the estate'" rather than a "'claim against the estate.'" Br. of Appellant at 45 (quoting *Lindberg v. United States*, 927 F. Supp. 1401, 1404-05 (D. Colo. 1996)). The Department also asserts that the TEDRA petition fails to meet § 2053 of the Internal Revenue Code's additional requirements because "[w]hen 'claims against the estate' are 'founded on a promise or agreement,' they must 'be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth.'" Br. of Appellant at 46-47 (quoting 26 U.S.C. § 2053(c)(1)(A)). We disagree.

### A. The TEDRA Petition Was a Valid Basis for Deduction

The federal tax code states that "the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts . . . for claims against the estate . . . as are allowable by the laws of the jurisdiction." 26 U.S.C. § 2053(a)(3). A claim may be based on tort, contract, *or an obligation imposed by law*. 26 C.F.R. § 20.2053-4(a)(1). The Washington Supreme Court has recognized claims for property after the death of a partner in a committed intimate relationship. *See Vasquez. v. Hawthorne*, 145 Wn.2d 103, 105, 107-08, 33 P.3d 735 (2001).

Here, Roldan's TEDRA petition was a legal and valid claim against the Estate because her claim for her one-half interest in the couple's property relied on an obligation imposed by

Washington law. Washington common law created this obligation via the committed intimate relationship doctrine. *See Vasquez*, 145 Wn.2d at 107-08; *see also, Olver* II, 161 Wn.2d at 672-73.

As discussed above, Roldan's entitlement to her one-half interest existed before Franks' death. Roldan's entitlement needed to be resolved in order to determine what assets were part of Franks' estate and eligible to be distributed to the other beneficiaries. Roldan's claim was thus not for a "portion of the estate," as the Department contends, but rather for assets that belonged to her upon Franks' death and not the Estate.

Therefore, Roldan's TEDRA petition was a valid and legal claim based on an obligation imposed by Washington common law.

B.     The TEDRA Petition Did Not Need to Meet the Additional 2053(c)(1)(A) Requirements

The Department also argues that because the TEDRA petition fails to meet 26 U.S.C. § 2053(c)(1)(A)'s additional requirements, it cannot be a legal and valid claim. The Department states that because the Estate never claimed a deduction based on Roldan's rights as a partner in a committed intimate relationship under 26 U.S.C. § 2053, it has never proved Roldan's claim was supported by adequate and full consideration. We disagree.

The federal statute provides, "The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." 26 U.S.C. § 2053(c)(1)(A).

Roldan's TEDRA petition does not need to meet these additional requirements because Roldan's claim was based on the committed intimate relationship doctrine, not a founded promise or agreement that had to be supported by consideration. The Department fails to show that the

committed intimate relationship doctrine has ever treated an implied contract as a precondition of a committed intimate relationship. The doctrine's foundation is to avoid unjust enrichment and achieve equity. *Connell*, 127 Wn.2d at 349-50.

Thus, the Estate does not need to prove that Roldan's petition was supported by full and adequate consideration because it was based on neither a promise nor an agreement, but a claim based on the committed intimate relationship doctrine.

ATTORNEY FEES

The Estate argues it should be awarded attorney fees under RCW 11.96A.150(1). Under this statute, we may equitably order costs, including reasonable attorney fees, to be awarded to any party. *Id.* We may consider any and all factors that we deem to be relevant and appropriate. *Id.* In light of the fact that the Estate's argument is consistent with the Supreme Court's longstanding reasoning in *Olver* II*,* 161 Wn.2d at 670-71, we award attorney fees to the Estate in an amount to be determined by a commissioner of this court.

CONCLUSION

We affirm the trial court's application of the committed intimate relationship doctrine and recognize that Roldan's property interest in the couple's community-like property existed prior to Franks' death. Under *Olver* II, upon his death, Frank's estate contained only his one-half interest in the community-like property acquired during the relationship. The agreement resolving Roldan's TEDRA petition appropriately recognized this. The trial court did not err in its application of the doctrine and it did not expand the doctrine to grant partners in a committed intimate relationship the same rights as a spouse. We also affirm on the basis that Roldan's petition

20

No. 60728-0-II

was a legal, valid, and deductible claim. We grant attorney fees to the Estate in an amount to be

determined by this court's commissioner.

GLASGOW, J.

We concur:

LEE, J.

CRUSER, C.J.